J. C. MEADE, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meade v. Commissioner
Docket No. 21261-86.
United States Tax Court
T.C. Memo 1988-108; 1988 Tax Ct. Memo LEXIS 136; 55 T.C.M. (CCH) 377; T.C.M. (RIA) 88108; March 10, 1988. J. Richard Staley, for the petitioner. Monica J. Miller, for the respondent. PAJAK
MEMORANDUM FINDINGS OF FACT AND OPINION PAJAK, Special Trial Judge: Respondent determined a deficiency in, and additions to, petitioner's 1982 Federal income tax as follows: Additions to tax under Sections
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6659 [1]
$ 2,910.87
$ 158.84
$ 253.75 *
[2] $ 684.00
*138 * 50 percent of the interest due on the $ 2,280 underpayment of tax due to negligence. After concessions, the issues for decision are: (1) whether petitioner is entitled to any deduction for charitable contributions, allegedly and principally to the Universal Life Church of Modesto, California; (2) whether petitioner is entitled to use the income averaging method of reporting his income under section 1301; (3) whether petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a)(1), and 6653(a)(2); and (4) whether damages should be awarded to the United States under section 6673. FINDINGS OF FACT To the extent stipulated, the facts are so found. Petitioners resided in Goldenrod, Florida, when his petition was filed. Petitioner had lived in Denver, Colorado, before his move to Florida. During 1982, petitioner was employed as a field service engineer by Technicare Corporation. Petitioner was not trained as a minister. He was declared a minister by the Universal Life Church of Modesto, California, (ULC Modesto) on June 6, 1970. Petitioner has no formal training as a minister. He admitted that he had no direct responsibility over any congregation as a Universal *139 Life Church (ULC) minister. He attended informal gatherings of four or five friends in his home, the homes of friends, and in parks, to discuss beliefs. He did not perform any baptisms or funerals. Petitioner had a personal checking account at the Sun Bank, Winter Park, Florida, during 1982. Petitioner wrote checks on his personal account payable to the "Universal Life Church, Inc." during 1982 in the total amount of $ 5,671.22. Nine of these checks were endorsed "Universal Life Church, Inc., Modesto, Calif., Acct. No. 700 209 473." This ULC account was not in California but was with the Sun Bank, Winter Park, Florida. We shall refer to this ULC account as the "ULC Florida" account. Six of petitioner's personal checks were endorsed "Universal Life Church, Inc. Acct. No. 712 310" and two such checks were endorsed "Universal Life Church, Inc., Modesto, Calif., Acct. No. 050 877." Examination of these checks shows that they were cleared in Denver, Colorado. We shall refer to these ULC accounts as the "ULC Colorado" accounts. The parties orally stipulated that a $ 200 amount allegedly donated to the ULC was from petitioner's Columbia Savings and Loan Association account in Aurora, *140 Colorado. The withdrawal slip shows that petitioner had an address in that city. There was no evidence that any entity or individual except petitioner had use of this $ 200. One check drawn on petitioner's personal account in the amount of $ 65 was endorsed "Universal Life Church, Inc., . . . Winston-Salem, North Carolina." This apparently was an account used by another ULC "minister' whose name petitioner could not remember. Of the $ 5,671.22 in checks drawn on petitioner's personal Sun Bank checking account, $ 5,119.10 was deposited in the Sun Bank ULC Florida account. Petitioner had signatory authority over this account. He used the funds from this account to pay his rent, electricity, telephone, travel and miscellaneous expenses. Petitioner filed his 1982 Federal income tax return in May 1983. Respondent disallowed petitioner's claimed charitable deduction of $ 6,215.74 for 1982. Respondent determined that petitioner did not establish that he qualified for the income averaging method of computing his tax liability. Respondent also determined the additions to tax set forth above. OPINION In this case petitioner presents yet another unfounded claim to deductions for *141 alleged contributions to the ULC. This Court alone has considered over 130 such cases. . The Court of Appeals for the Eleventh Circuit, to which an appeal of this case would lie, has characterized the appeal of such cases as frivolous. , affg. per curiam an unreported opinion of this Court. [3] We agree with the statement in , that like the many preceding ULC cases, petitioner's claims "do not even pass the smell test." It is well established that deductions are a matter of legislative grace, and that a taxpayer must satisfy the specific statutory requirements for the deductions he claims. , affd. without published opinion . A taxpayer bears the burden of proving his entitlement to the deductions he claims. ; Rule 142(a). *142 A charitable contribution or gift is allowed as a deduction under section 170 if it is made to an entity organized and operated exclusively for religious or charitable purposes, provided that none of the net earnings of the organization inure to the benefit of a private individual. [4]
*143 Petitioner drew checks made payable to ULC Modesto. He then deposited the checks in the ULC Florida account in the total amount of $ 5,119.10. Petitioner asserts that the ULC Florida account was a ULC Modesto account. This assertion is unfounded since petitioner failed to show that any gift had been made. The term "charitable contribution" as it is used in section 170 is largely synonymous with the term "gift." A gift is generally defined as a voluntary transfer of property to another without consideration. Petitioner failed to prove that a transfer of funds had been made or that any other person had control over the ULC Florida account. Without a transfer of property to another no gift occurs, because the funds remain under petitioner's dominion and control. . Moreover, the record overwhelmingly establishes that the deposits to the ULC Florida account inured to petitioner's benefit. Section 170(c)(2)(C); ; , affd. without published opinion . Petitioner *144 wrote checks on the ULC Florida account to pay his rent, electricity, telephone, travel and miscellaneous expenses. In fact, petitioner admitted at trial that the funds allegedly contributed to the ULC Florida account were used to pay these personal expenses. Petitioner's assertion that the payment of his personal expenses from the funds in the Florida ULC account was deductible as a parsonage allowance is specious. Section 107 provides in pertinent part that "in the case of a minister of the gospel income does not include * * * the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home." Section 107 allows an exclusion from income paid to a minister by a religious organization for money expended on housing. The parsonage allowance exclusion does not allow the exclusion of compensation from other sources. Petitioner deposited his own funds into the ULC Florida account. Petitioner did not receive any compensation from a religious organization. He cannot exclude compensation from other sources under section 107. The remaining checks and the withdrawal slip representing alleged charitable contributions to ULC Modesto or ULC *145 Denver accounts and to the ULC North Carolina account are insufficient to substantiate a charitable contribution. Petitioner has not shown that a contribution occurred to an entity organized and operated exclusively for charitable or religious purposes, and that none of the net earnings of the organization inured to the benefit of petitioner or other individuals. The endorsement stamps reading "Universal Life Church, Inc., Modesto, Calif." are insufficient to show that the funds were transferred to a charitable organization and that the net earnings did not inure to the benefit of petitioner or other individuals. While petitioner denied that he had signatory control over the ULC Colorado accounts, in view of the ULC tax avoidance transfers made by petitioner with the ULC Florida account, his uncorroborated denial is simply unbelievable. In answer to a question at trial, petitioner did not deny that he had received funds back from the ULC Colorado accounts. Since petitioner has failed to meet his burden of showing that he made any valid charitable contributions, we uphold respondent's determination on this issue. [5]
*146 In another ULC case, the Court of Appeals for the Eleventh Circuit imposed double costs in favor of respondent and against the taxpayer. We find apposite the following statement of the Eleventh Circuit: We note that other taxpayers have attempted to avoid payment of taxes through claimed contributions to the Universal Life Church and in those cases have attempted the same tactics as the taxpayers here. If there are similar frivolous appeals of other cases, as frivolous as this, we would be inclined to asses attorney's fees in addition to doubling the costs. [, affg. per curiam an unreported opinion of this Court. [6]] Respondent also disallowed petitioner's use of the income averaging method of reporting income. Petitioner has the burden of proving that respondent's determination is incorrect. ; Rule 142(a). Since petitioner has failed to introduce any evidence showing he is entitled to use the income averaging *147 method, he has not met his burden of proof and respondent's determination is sustained. There is no question that petitioner's 1982 Federal income tax return, due on April 15, 1983, but filed in May 1983, was untimely. Petitioner offered no explanation for the delinquent filing of his return and thus failed to carry his burden of proving that the delinquency was due to reasonable cause and not due to willful neglect. . Petitioner is liable for the addition to tax under section 6651(a). Respondent also determined that petitioner is liable for additions to tax under section 6653(a). Petitioner bears the burden of proving that the underpayment was not due to negligence or intentional disregard of the rules and regulations. Axelrod v. Commissioner, 56, T.C. 248, 258 (1971). Petitioner deliberately understated his tax liability by claiming contribution deductions which were without substance in law or in fact. Petitioner was negligent in claiming these deductions and respondent's determinations are sustained. . Congress has granted this Court *148 the authority to award the United States damages up to $ 5,000 whenever it appears to this Court that the proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings was frivolous or groundless. Section 6673. This Court has held numerous times that a taxpayer's liability for tax cannot be escaped by establishing a ULC bank account and then paying personal expenses from the funds in that account. ; , affd. without published opinion . Petitioner was informed by respondent about the provisions of section 6673 and that the Court had repeatedly found actions based on ULC contributions to be without merit. Petitioner nevertheless maintained this action and delayed its determination by failing to produce documentary evidence until trial. Petitioner's waste of the Court's time and resources on a case based on grounds previously determined and his failure to cooperate with preparation for trial is a disservice to taxpayers with legitimate issues *149 to be determined. We find the proceedings in this case were instituted and maintained primarily for delay and that petitioner's position in this proceeding is frivolous and groundless. Damages will be awarded to the United States in the amount of $ 2,300. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable year in question. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. In his answer, respondent conceded that the section 6659 addition to tax was not applicable in this case and requested that the Court award damages to the United States under section 6673.↩
3. This unreported opinion was a Bench Opinion rendered by Judge C. Moxley Featherston on March 3, 1986. ↩
4. Section 170(c) provides in pertinent part as follows: SEC. 170(c). CHARITABLE CONTRIBUTION DEFINED. -- For purposes of this section, the term "charitable contribution' means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, fund, or foundation -- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * ↩
5. Petitioner offered no documentation to support his claim that a $ 37.35 charitable contribution deduction shown on his return represented a payroll deduction for the United Way. Since we found that he was not a believable witness, his unsupported testimony is insufficient to prove this claim. ↩
6. As stated in footnote 3, supra,↩ this unreported opinion was a Bench Opinion rendered by Judge C. Moxley Featherston on March 3, 1986.